**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| PLAN PROS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:19-cv-04068-SAC-ADM |
| | ) | |
| DULTMEIER HOMES CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OBJECTIONS AND MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR COSTS, INCLUDING ATTORNEY FEES**

Defendant Dultmeier Homes Co. ("Dultmeier"), hereby submits this memorandum in opposition to Plaintiffs' Motion for Costs, Including Attorney Fees (Doc. 60). This Court should deny Plaintiffs' motion in full. Alternatively, in the event this Court awards fees and costs, it should substantially reduce the amount sought by Plaintiffs in their motion.

**I.      General Background**

Plaintiffs, who are in the supposed business of producing market-ready designs for modest single-family homes, now seek costs and attorney fees after accepting an unambiguous offer of judgment that resolved "any and all issues"—including costs and fees—between the parties. As the Seventh Circuit has noted in case involving ***the exact same plaintiffs in this case***, a copyright suit such as this one "shows the difficulty in finding protected creative expression in a crowded field, in this case, architectural design of single family homes. The case also shows the challenge in administering intellectual property law to discourage so-called intellectual property 'trolls' while protecting genuine creativity." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1096 (7th Cir. 2017).

The Seventh Circuit described Plaintiffs' business model of trawling the Internet for intellectual property treasures as follows:

> "In recent years, opportunistic holders of copyrights, patents, and other intellectual property have developed unsavory reputations for 'trolling,' bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation. Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation." *Lexington Homes*, 858 F.3d at 1097.

Like the trolls' other victims, Defendants here calculated the costs and risks of litigation and opted to serve an offer of judgment on Plaintiffs "to resolve any and all issues by and between the parties." After acceptance of the offer of judgment resolving any and all issues, Plaintiffs now seek to tack on additional costs and fees to that judgment. This Court should deny Plaintiffs' request for costs and fees.

## II.   Argument

### a.  *Plaintiffs Accepted an Unambiguous Offer that Included Costs and Attorneys' Fees.*

Rule 68 of the Federal Rules of Civil Procedure provides:

> "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment."

On September 17, 2020, Defendants made a joint offer of judgment to Plaintiffs that stated "Defendants jointly offer plaintiffs $75,000.00 to resolve **any and all issues by and between the parties**." (Emphasis added.) On September 24, 2020, Plaintiffs accepted the joint offer of judgment. (Doc. 57.) The clerk entered judgment on September 29, 2020. (Doc. 58.)

The plain purpose of Rule 68 is to encourage settlement and avoid litigation. Rule 68 allows Defendants, as they did here, to make a firm offer of judgment "on specified terms." Here, Defendants' specified terms were an offer of $75,000.00 to resolve any and all issues by and between the parties.

Seeking to inject ambiguity into this case where none exists, Plaintiffs assert that Defendants' offer was silent as to costs or attorney fees and, therefore, Plaintiffs assert that their acceptance entitles them to $75,000.00 to resolve any and all issues between the parties *plus* costs and fees. But Plaintiffs' assertion misreads Defendants' very clear, unambiguous offer on specified terms:  the offer was to resolve **any** and **all** issues by and between the parties. The offer of judgment did not end after "$75,000.00"—it continued with very specific language. Plaintiffs' strained recharacterization of Defendants' offer as "ambiguous" or "silent" on the issue does not make it so:  Defendants' offer is not reasonably susceptible of more than one interpretation. Rather, it has a definite and very precise meaning, and there is no reasonable basis for a difference of opinion. Costs and fees are clearly included in the offer.

This case is similar to *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390 (7th Cir. 1999) (Posner, C.J.). There, the plaintiff accepted an offer for "judgment in the amount of $56,003.00 plus $1,000 in costs as one total sum as to all counts of the amended complaint." *Id.* at 391. One count of the complaint expressly requested attorneys' fees as well as damages. *Id.* Like here, after accepting the award, the plaintiff moved the district court for an award of attorneys' fees. *Id.* The district court denied this request on the ground that the offer plaintiff had accepted was inclusive of attorneys' fees. *Id.* On appeal, the Seventh Circuit upheld this decision. *Id.* Although the plaintiff had argued that any ambiguities in the offer must be resolved against the defendant based on prior case law, the Seventh Circuit held that there was no ambiguity in

the offer that had been accepted in the case before it: "'[O]ne total sum as to all counts of the amended complaint' can only mean one amount encompassing all the relief sought in the counts. One of those counts specified attorneys' fees as part of the relief sought. That relief was covered by the offer." *Id.* at 391-92.

Analogizing Rule 68 offers with contract law, the Seventh Circuit stated: "Granted, the contract-law analogy is just that, an analogy, for the reason stated earlier: the consequences of rejecting a Rule 68 offer are more serious than those of rejecting an ordinary contract offer. But the appropriate adjustment is to insist that the Rule 68 offer be completely unambiguous, not that it use the magic words 'attorneys' fees.'" *Id.* at 392. Ultimately, the Seventh Circuit rejected any sort of "magic words" approach in favor of an approach that give effect to an unambiguous offer even if it does not explicitly mention attorneys' fees. *Id.* at 393.

The Seventh Circuit also provided an instructive case in *Pelkowski v. Highland Managed Care Grp.*, 44 F. App'x 1 (7th Cir. 2002), wherein it addressed a similar argument to the one here where a plaintiff tried to assert that the offer of judgment was ambiguous because it was silent on the issue of fees. There, the Court concluded the district court properly denied the motion for fees based on the unambiguous language of the offer of judgment:

> "Pelkowski requested fees in her complaint, and the offer specifically provides that Pelkowski would receive judgment in the amount of $30,000 *on the complaint*. The offer therefore covers the fees Pelkowski sought in her complaint. The liability-limiting language Highland included in the offer only reinforces this conclusion. The offer clearly states that it covers "any and all claims," and bars Pelkowski from seeking any further relief from Highland in connection with any issues whatsoever." *Id.* at 2 (internal citation omitted).

The Second Circuit's decision in *Steiner v. Lewmar, Inc.*, 816 F.3d 26 (2nd Cir. 2016), should also provide some guidance to this Court. There, the plaintiffs accepted the defendants' offer of judgment; "[i]n exchange for the dismissal of 'all claims,' defendants agreed to the entry

of judgment awarding plaintiffs $175,000 and granting injunctive relief." *Id.* at 29. The offer of judgment in *Steiner* did not mention attorneys' fees or costs. *Id.* The Second Circuit stated that "[a] contract is ambiguous if it is 'reasonably susceptible of more than one interpretation,' and unambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Id.* at 32. Where the interpretation urged by one party would strain the language beyond its reasonable and ordinary meaning, the court is not required to find the language ambiguous. *Id.* "Thus, although use of the words 'attorneys' fees' is the best practice, an offer that does not use these exact words may nonetheless be unambiguous." *Id.* The Second Circuit ultimately upheld the district court's finding that the acceptance of the offer fully resolved the claim for attorneys' fees, both because the plain wording of the offer supports the conclusion that claims for attorneys' fees are covered and because the context made clear that the parties intended to include claims for attorneys' fees. *Id.* at 33.

Like in *Nordby*, *Pelkowski*, and *Steiner*, there can be **zero** doubt here that Defendants' offer of $75,000.00 to resolve any and all issues by and between the parties unambiguously included costs and attorneys' fees. *See also Steele v. KMG Enters.*, No. 12-2659-KHV, 2014 WL 51261, at *1-*3 (D. Kan. Jan. 7, 2014) (denying plaintiff's motion for costs and attorney fees after acceptance of offer of judgment for $7,500 because the plain language of the offer clearly indicated the defendant intended to offer a lump sum of $7,500 to settle all claims, including attorney's fees and other costs). "All" means just that: all. *See, e.g., Bumbal v. Smith*, 165 P.3d 844, 845-46 (Co. App. 2007) (finding offer of settlement as to all claims encompassed all relief sought on the basis of a claim in the original complaint because "'all' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component

of, and is synonymous with 'every' and 'each'"). Notably, as Plaintiffs themselves make very clear in their motion, the issues of costs and attorneys' fees had both been included in Plaintiffs' prayer for relief in their amended complaint and had been discussed at length by the parties at mediation. (Doc. 60-1, at 2, 7.) *See Steiner*, 816 F.3d at 33. The interpretation of the offer urged by Plaintiffs would strain the language of the offer beyond its reasonable and ordinary meaning. *See id.* at 32. The language of Defendants' offer here can only mean one amount encompassing any and all issues by and between the parties. Those issues clearly included costs and attorneys' fees. Those issues were covered by the offer. Plaintiffs' acceptance of the offer precludes their attempt to obtain additional costs and fees. This Court should deny Plaintiffs' Motion for Costs, Including Attorney Fees.

### b. *Plaintiffs' Failure to Comply with D. Kan. Rule 54.2 Justifies Denial of their Motion Outright.*

Plaintiffs have failed to comply with Local Rule 54.2, which requires them to consult with Defendants **before** moving for fees. Additionally, Plaintiffs needed to file a statement that, after consultation in accordance with the rule, the parties have been unable to reach an agreement with regard to the fee award. The statement needed to set forth the date of the consultation, the names of those who participated, and the specific results achieved. Notably, this Court "will not consider a motion for statutory attorney's fees made pursuant to Fed. R. Civ. P. 54(d)(2) until the moving party files the statement of consultation in compliance with this rule." This Court should disallow all costs and fees. *See Raizada v. Auto Gallery Motorcars-Beverly Hills, LLC*, No. 12-2546, 2013 WL 1397729, at *1-*2 (D. Kan. Apr. 5, 2013) (rejecting request for costs, attorney fees, and other expenses for failure to comply with procedures in court order and D. Kan. Rule 54.2); *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 4822050, at *1 (D. Kan.

Nov. 4, 2008) (striking memorandum in support of motion for attorneys' fees and non-taxable expenses for failure to comply with Local Rule 54.2).

### c. An Award of Costs and Fees Here Would be Counter to the Copyright Act's Goals and Purposes.

Even if this Court determines that Plaintiffs **may** be entitled to costs and fees, this Court still should exercise its discretion to not award costs and/or fees in this case. Plaintiffs contend they are entitled to fees and costs under 17 U.S.C. § 505, which provides "the court **in its discretion may** allow the recovery of full costs by or against any party" and the Court "**may** also award a reasonable attorney's fee to the prevailing party as part of the costs." (Emphasis added.) This Court also has discretion to deny costs under Rule 54, such as damages are nominal, costs are unreasonably high or unnecessary, when recovery was insignificant, or when the issues were close and difficult. *See, e.g., Burton v. R.J. Reynolds Tobacco Co.*, 395 F. Supp. 2d 1065, 1073-74 (D. Kan. 2005). Contrary to Plaintiffs' suggestion, awarding fees is far from the rule rather than the exception. The word "may" clearly connotes that this Court has discretion to deny Plaintiffs' requests for costs and fees. *See, e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994). "The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion." *Id.* The Supreme Court has stated that "a district court may not 'award[] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985, 195 L. Ed. 2d 368 (2016).

There is no precise rule or formula for making a fee determination, but equitable discretion should be exercised in light of considerations identified by the Supreme Court. *Fogerty*, 510 U.S. at 534. The Supreme Court's list of non-exclusive factors that a district court may consider in determining whether to award fees includes objective reasonableness (as to both

factual and legal arguments in the case), motivation, the need in particular circumstances to advance considerations of compensation and deterrence, and frivolousness. *Kirtsaeng*, 136 S. Ct. at 1985-89; *Fogerty*, 510 U.S. at 534 n.19. All of these considerations weigh against assessing costs and fees here.

### i. Motivation

As the Supreme Court has stated, "'[t]he primary objective of copyright is not to reward the labor of authors'"—as Plaintiffs here seek—"'but '[t]o promote the Progress of Science and useful Arts.' To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work.'" *Fogerty*, 510 U.S. at 527. Because "'copyright law ultimately serves the purpose of enriching the general public through access to creative works,'" fee awards "should encourage the types of lawsuits that promote those purposes." *Kirtsaeng*, 136 S. Ct. at 1986; *see also Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, (10th Cir. 2005) (affirming district court's denial of an award of fees where district court outlined the competing interests furthered by the Copyright Act and determined that neither would be served by awarding fees in the case). The converse should also be true:  this Court should not reward Plaintiffs where their lawsuit does not promote these purposes. Defendants paid the proverbial troll under the bridge and allowed Plaintiffs to take judgment here rather than continue to be tied up in expensive litigation with continuing costs and risks; an award of costs and fees here would only serve to encourage opportunistic holders of copyrights to continue bringing strategic infringement claims of dubious merit in the hope of arranging prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation. *See Lexington Homes*, 858

F.3d at 1097. An award of costs and fees here would be contrary to the goals and policies served by the Copyright Act.

A simple search of PACER reveals Plan Pros, Inc., has been a party in 23 federal lawsuits, while Prime Designs, Inc., is listed as a party in 14 federal lawsuits. (*See* Ex. A, PACER Search Returns for Plan Pros, Inc., as party; Ex. B, PACER Search Returns for Prime Designs, Inc., as party.) This Court can and should take judicial notice of matters of public record, such as the pleadings and filings in these cases filed by Plaintiffs herein, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting that a court may "take judicial notice of publicly filed records in . . . other courts concerning matters that bear directly upon the disposition of the case at hand"), *cert. denied*, 552 U.S. 969, 128 S. Ct. 424, 169 L. Ed. 2d 297 (2007). The vast majority of cases listed appear to be as a plaintiff. In fact, many of the case titles also include Design Basics, LLC. In particular, both Plan Pros, Inc., and Prime Designs, Inc., were plaintiffs in the Lexington Homes case, where the Seventh Circuit stated that a copyright suit such as this one "shows the difficulty in finding protected creative expression in a crowded field, in this case, architectural design of single family homes. The case also shows the challenge in administering intellectual property law to discourage so-called intellectual property 'trolls' while protecting genuine creativity." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1096 (7th Cir. 2017). Referencing Plaintiffs' business model of trawling the Internet for intellectual property treasures, the Seventh Circuit explicitly stated that "This business strategy is far removed from the goals of the Constitution's intellectual property clause to 'promote the Progress of Science and useful Arts.'" *Id.* Plaintiffs' choice to "aggressively prosecute" copyright infringement claims is not as pure as

Plaintiffs claim. (*See* Doc. 60-1, at 11.) Awarding costs and fees here would not encourage the ***proper*** prosecution of copyright infringements. This Court should find Plaintiffs' motivation in pursuing this case suspect and deny them an award of costs and fees.

### ii. Objective Reasonableness

Plaintiffs assert their claims were objectively both legally and factually reasonable. But Plaintiffs misunderstand the nature of the analysis into this factor. It is the objective reasonableness of Defendants' defenses that is at issue. *See Kirtsaeng*, 136 S. Ct. at 1986-89. Here, although Defendants did not end up presenting their defenses at summary judgment or trial, their defenses were objectively reasonable, and Plaintiffs do not contend otherwise in their motion. (*See* Doc. 60-1, at 12.) Although they chose to offer judgment to resolve the case rather than further litigation, Defendants' defenses are pertinent to this factor; as such, Defendants will address them in brief. Ultimately, the issues in this case were close and difficult such that fees and costs should not be awarded.

Defendants seriously question whether Plaintiffs would have been able to prove essential elements of their claims. To establish copyright infringement, Plaintiffs need establish both ownership of a valid copyright and copying of constituent elements of the work that are original. *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016). Originality requires some minimal degree of creativity. *Id.* at 1138-39. Plaintiffs needed to prove that Defendants "'unlawfully appropriated protected portions of the copyrighted work.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1178 (10th Cir. 2009). The copying element consists of two components:  first, Plaintiffs must show that Defendants copied Plaintiffs' work as a factual matter, and second, Plaintiffs must demonstrate "'substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected.'" *Savant*

*Homes*, 809 F.3d at 1138. Because direct proof of copying is often hard to come by, a plaintiff can indirectly prove copying by establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material. *La Resolana Architects*, 555 F.3d at 1178. Defendants questioned Plaintiffs' ability to establish access. Access cannot be inferred by mere speculation or conjecture. *Id.* Defendants' assertion that Plaintiffs had access because the plans were on their website is nothing more than a bare possibility that Defendants had access to the copyrighted plans, which is insufficient to establish access. *See id.* at 1178-79. (*See* Ex. C, Carl Cuozzo Dep. 52:2-54:1; Ex. 12 to Ex. C.)

In addition to access problems, Defendants challenged the protectability of Defendants' copyrighted works. The elements of the work that were copied needed to be "'protected expression and of such importance to the copied work that the appropriation is actionable." *La Resolana Architects*, 555 F.3d at 1178. A determination of substantial similarity requires a determination as to which elements of the copyrighted work are protectable and whether those elements are substantially similar to the accused work. *Savant Homes*, 809 F.3d at 1138. With respect to architectural works in particular, the Tenth Circuit has held that "individual standard elements of architectural works are not protected, but original selections or arrangements of such elements may be protectable." *Id.* at 1139. It was a very close issue as to whether Plaintiffs' plans were even protectable at all, as they consisted almost exclusively of standard elements and standard arrangements of elements. *Id.* at 1141-42. Defendants' defenses were objectively reasonable. Simply because Defendants elected to offer judgment in favor of resolving this case does not mean that the assertion of Defendants' defenses was unreasonable. This Court should find that this factor weighs in favor of not assessing costs and/or fees against Defendants.

### iii.   Considerations of Deterrence

Plaintiffs assert they should be awarded costs and fees because it would deter Plaintiffs' competitors from advertising and constructing homes from copied home designs. (Doc. 60-1, at 12.) Plaintiffs again misunderstand this factor. This factor does not focus on deterring competitors, but on deterring Defendants themselves. *See, e.g., Energy Intelligence Grp. v. CHS McPherson Refinery*, No. 16-01015-EFM, 2019 WL 367788, at *6 (D. Kan. Jan. 30, 2019). Importantly for this factor, Plaintiffs do not assert infringement is continuing. There is no reason Defendants need to be further deterred. Annette Stahl testified that the artwork at issue in this case was used as a placeholder image until the house was actually built, at which point the images were replaced by photographs of as-built houses. (Ex. D, Annette Stahl Dep. 96:23-97:14.) No customer actually came to her and asked for a house to be built exactly as it appeared in the artistic elevations on the website. Further, no jury found willful infringement. This factor weighs against awarding costs and/or fees.

### iv.   Frivolousness

Plaintiffs do not appear to address this factor. (Doc. 60-1, at 11-12.) Defendants' defenses were not frivolous in any way as set forth above, and they anticipated raising many of these arguments on summary judgment prior to the acceptance of the offer of judgment. This factor does not weigh in favor of awarding costs and/or fees.

### d.   DMCA Considerations

Plaintiffs also seek costs and fees under the Digital Millennium Copyright Act ("DMCA"). Similar to the Copyright Act, 17 U.S.C. § 1203(b) provides the Court with discretion to allow the recovery of costs or award reasonable attorney's fees.

Section 1202 of the DMCA generally protects the integrity of copyright management information ("CMI"). Section 1202(b) requires intentional removal or alteration of CMI knowing, or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under the title. The definition of CMI requires that the identifying information be conveyed in connection with copies of a work. There was a significant question in this case as to whether Plaintiffs could show that there was a statutory copyright notice or any indication that the photograph was copyrighted anywhere near the photographs at issue, such as with a watermark. (Ex. D, Stahl Dep. 58:15-62:16.) Further, Stahl testified she simply copied the images by hitting control-C, control-V, and saved them. (Ex. D, Stahl Dep. 61:16-62:16.) Without a watermark or other copyright information, there is a serious question as to intentional removal or alteration of CMI.

Further, under § 1203(c)(5), the Court, in its discretion, "may reduce or remit the total award of damages in any case in which the violator sustains the burden of proving, and the court finds, that the violator was not aware and had no reason to believe that its acts constituted a violation." This section is particularly appropriate here, where Annette Stahl testified at her deposition that she looked for copyright notices near the photographs in question and did not see any. (Ex. D, Stahl Dep. 58:15-62:16.) Simply inserting front of house of houses or front of ranch homes into a search engine and saving photographs that were not watermarked and did not appear copyrighted warrants application of § 1203(c)(5) here:  Defendants simply were not on notice that a photograph may have been copyrighted. Further, at least one of the plans Plaintiffs claim was copyrighted allowed for it to be printed from the website—without any indication that permission was required before printing. (Ex. E, Tim Rollenhagen Dep. 80:17-82:20.) While § 1203(c)(5) may not apply here to reduce damages, it should be considered by the Court in

determining that a fee award is not necessary here. This Court should exercise its discretion to not award costs and fees.

### e. Even if this Court Awards Costs, it Should Disallow Many of Plaintiffs' Claimed Expenses.

Taxation of costs is governed by 28 U.S.C. § 1920. That statute provides that a judge or clerk *may* tax as costs the following:  (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. Further, the Copyright Act's reference to "full costs" in 17 U.S.C. § 505 "covers *only* the six categories specified in the general costs statute." *Rimini Street, Inc. v. Oracle USA, Inc.*, 193 S. Ct. 873, 875-76, 203 L. Ed. 2d 180 (2019) (emphasis added). Absent express authority, this Court has no discretion to award expenses that are not set forth in 28 U.S.C. § 1920 as costs. *Rimini Street*, 193 S. Ct. at 877; *Burton*, 395 F. Supp. 2d at 1077.

To be clear, this Court should deny Plaintiffs' motion in its entirety and disallow costs, including attorneys' fees, for the reasons set forth above. But even if this Court determines costs and fees are authorized and appropriate here, this Court should still reduce Plaintiffs' requests. Plaintiffs have the burden to establish the amount of compensable costs and expenses to which they are entitled and to prove that the expenses sought to be taxed fall within the categories of allowable costs. *Burton*, 395 F. Supp. 2d at 1077. Further, this Court must carefully scrutinize all

items Plaintiffs propose as costs. *Id.* at 1079. Many of Plaintiffs' requested expenses do not fall within the authorized statutory costs and should be disallowed.

### i.  Preparation of Overlay Graphics

Plaintiffs seek $320.00 for "Preparation of Overlay Graphics" by Annette Guy. (Doc. 60-4, at 3.) This Court should not tax this cost because the overlay graphics were not necessary to the presentation of Plaintiffs' case—especially where this case did not proceed to summary judgment or trial. *See, e.g., Burton*, 395 F. Supp. 2d at 1085. In *Burton*, the Court denied costs for animations used during expert testimony at trial as not necessarily obtained for use in the case because they merely illustrated the expert testimony and thereby made the presentation of evidence at trial more effective and efficient. *Id.* Even then, that still was insufficient to justify an award of costs. *Id.* This Court should deny Plaintiffs' request for $320.00 for preparation of overlay graphics as not necessary to the presentation of their case.

### ii.  Mediation Fees

Plaintiffs seek mediation fees in the amounts of $3,375.00 and $431.25. (Doc. 60-4, at 3.) These fees, however, are neither available under § 1920 nor as part of a fee application. "To be sure, mediation fees are not covered by section 1920 and costs associated with a mediation are not recoverable under that statute." *Bell v. Turner Recreation Comm'n*, No. 09-2097-JWL, 2010 WL 126189, at *9 (D. Kan. Jan. 8, 2010); *see also Cohen-Esrey Real Estate Servs v. Twin City Fire Ins. Co.*, No. 08-2527, 2011 WL 3608671, at *5 (D. Kan. Aug. 12, 2011) (collecting cases that mediation fees and costs are not taxable). In *Bell*, the Court concluded that "shifting the costs of mediation to a defendant (in the absence of an agreement between the parties to do so) if it concludes that mediation with an offer of judgment would provide a disincentive for a defendant to make such an offer because it would open the door to costs that would not

otherwise be recoverable." 2010 WL 126189, at \*9. This Court lacks the discretion to tax costs not specifically authorized and, for reasons set forth in *Bell*, should deny Plaintiffs' request for mediation fees.

### iii.   Deposition Transcript Fees

Plaintiffs seek $2,715.10 in fees for printed or electronically recorded transcripts necessarily obtained for use in the case. (Doc. 60-4, at 1.) These fees are broken down as a "Deposition Transcript Expense" on 9/15/20 of $2,188.80 and a "Deposition Transcript Expense" on 9/17/20 of $526.30, but they are not further itemized in any way. (Doc. 60-4, at 3.)

> "The basic standard . . . in determining whether to allow the expense of a transcript as a taxable cost is whether the transcript was 'necessarily obtained for use in the case.' This does not mean that the transcript must have been 'indispensable' to the litigation to satisfy this test; it simply must have been 'necessary' to counsel's effective performance or the court's handling of the case. The transcript may have been procured either for use at the trial or after the trial. But the words 'use in the case' in Section 1920 mean that the transcript must have a direct relationship to the determination and result of the trial. Taxation will not be allowed if the transcript was procured primarily for counsel's convenience." *Burton*, 395 F. Supp. 2d at 1078-79.

This Court cannot tax these costs here because Plaintiffs have failed to meet their burden of establishing that the transcript(s) was/were necessarily obtained for use in the case. It is impossible to tell with the limited information provided by Plaintiffs what, exactly, the $2,715.00 covered. Further, this Court simply cannot conclude that the various transcripts were obtained for use in the case as opposed to being procured solely for counsel's convenience—especially when the transcripts were not used for summary judgment or trial. *Burton*, 395 F. Supp. 2d at 1079-81 ("Necessity in this context means a showing that the materials were used in the case and served a purpose beyond merely making the task of counsel and the trial judge easier."). Depositions taken merely for discovery are not taxable as costs. *Id.* at 1081. For these reasons, this Court must deny Plaintiffs' requests for costs of deposition transcripts.

#### iv.  Pro Hac Vice Fees

Plaintiffs' claimed costs include pro hac vice fees of $100.00. (Doc. 60-4, at 1, 4.) Plaintiffs do not itemize this cost further, but it appears it was for the admission of Sean J. Quinn and John D. LaDue. (Docs. 8 & 9.) Given that this case did not proceed to trial such that one of these admissions was for lead counsel, the pro hac vice fees of both should be denied. *See Burton*, 395 F. Supp. 2d at 1077. At the very least, the pro hac vice admission of John LaDue, who spent 12.2 hours total on this case, was not a necessary part of the case, and this Court should disallow this amount as costs. *See Burton*, 395 F. Supp. 2d at 1077 (disallowing pro hac vice fees for admission of attorneys where it was not readily apparent to the court the manner in which the attorneys were a necessary part of the case).

#### v.  Service Fees

Plaintiffs seek $335.00 in service fees. (Doc. 60-4, at 1, 4-5.) This amount is not further itemized. It appears that these fees were for "Pro Legal Services." (Doc. 60-4, at 4-5.) It further appears that this entire amount may be related to service of the summons. (Doc. 60-4, at 5.) It is not clear what—or who—these services fees relate to. First, these fees are clearly not fees of the clerk or marshal under § 1920. For this reason alone, these costs should not be taxed. *Phillips USA, Inc. v. Allflex USA, Inc.*, No. 94-2012-JWL, 1996 WL 568814, at *1 (D. Kan. Sept. 4, 1996) (refusing to tax costs for service of three subpoenas because documentation submitted suggested subpoenas were served by individuals). Even if taxable, service fees to private process servers are generally taxable *only* up to the amount that would have been incurred if the U.S. Marshal's office had effected service. *Burton*, 395 F. Supp. 2d at 1078. Plaintiffs have failed to meet their burden to substantiate this cost and, as such, this Court should disallow it.

#### vi.  PACER Fees

Plaintiffs seek a total of $1.80 for PACER Docket Report Fees. (Doc. 60-4, at 4.) Plaintiffs do not show that these fees were necessarily or reasonably incurred, nor do they show how they are authorized by the statute. These costs should be considered simply overhead. This Court should decline to award these costs.

### vii. Travel Expenses

Plaintiffs seek $81.75 for travel expenses for the scheduling conference. (Doc. 60-4, at 4.) Although not requested as costs on the bill of costs but listed as part of the attorneys' fees, Plaintiffs' "Detail Transaction File" also lists costs of $315.88 billed 12/19/19 for United flight for 1/7/20 hearing, $158.81 for hotel for 1/6/20-1/7/20 billed 12/19/19, and $724.36 for transportation, room, and board billed 2/24/20 for travel for Rule 16 conference. (Doc. 60-4, at 12, 14.) These expenses are not costs authorized by statute. This Court should disallow all travel expenses. *Burton*, 395 F. Supp. 2d at 1087 (disallowing travel expenses; collecting cases).

### f. Plaintiffs have not met their Burden to Establish they are Entitled to Attorneys' Fees.

In the event this Court determines a fee award is appropriate, it still must scrutinize the amount of that award. Generally, in determining reasonable attorneys' fees, this Court arrives at a lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Univ. of Kan. v. Sinks*, No. 06-2341-JAR, 2009 WL 3191707, at *3 (D. Kan. Sept. 28, 2009). Plaintiffs bear the burden of establishing entitlement to an award and of documenting the appropriate hours expended and hourly rates. *Id.* "Put another way, the 'burden in an application for attorneys fees is to prove and establish the reasonableness of each dollar, each hour, above zero.'" *Caputo v. Prof'l Recovery Servs.*, No. 00-4208-SAC, 2004 WL 1503953, at *3 (D. Kan. June 9, 2004). In determining the lodestar, this Court first determines the amount of hours reasonably expended by Plaintiffs' counsel. *Univ. of Kan.*, 2009 WL

3191707, at *3. Plaintiffs must make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or unnecessary. *Id.* This Court has a corresponding obligation to exclude hours not reasonably expended from the calculation. *Caputo*, 2004 WL 1503953, at *3. After the Court determines whether counsel exercised billing judgment, it then evaluates the hours expended on each task and determines if they are reasonable. *Univ. of Kan.*, 2009 WL 3191707, at *3. If Plaintiffs meet their burden, then the lodestar figure is presumed to be a reasonable fee, but the Court may still adjust the lodestar upward or downward as necessary. *Id.*

Certain tasks identified in Plaintiffs' counsels' time records are not properly chargeable at all. Defendants point this Court to the below as examples as reasons to adjust the lodestar downward or to otherwise disallow specific fees in order to assist the Court with its review of Plaintiffs' invoices.

### i. Block Billing

While there is no per se rule in the Tenth Circuit that mandates reduction or denial of a fee request due to records which reflect block billing, this Court "may discount the requested hours if it finds that the records submitted do not allow the Court to determine how the hours were allotted to specific tasks and the reasonableness of that time." *Univ. of Kan.*, 2009 WL 3191707, at *5-*6. For example, an entry on 7/9/20 demonstrates the difficulties with block billing; it bills 3.90 hours to "Exchange several emails with mediator regarding SOL defenses, fees, and proving substantial similarity; conduct research regarding discovery rule in copyright cases in 2nd, 7th, and 10th Circuits, telephone conference with Matt McNicholas regarding defendants' arguments on independent creation; exchange emails with Matt McNicholas regarding independent creation arguments." (Doc. 60-4, at 18.)

### ii. Travel Time

"Travel time should not be compensated at the full hourly rate because such time is inherently unproductive." *Fox v. Pittsburgh State Univ.*, 258 F. Supp. 3d 1243, 1259 (D. Kan. 2017). "'Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the most reasonable approach is to allow counsel to recover 50 percent of travel time.'" *Id.*

With respect to travel time, the descriptions of the time do not allow this Court to ascertain how much time was spent traveling as opposed to other tasks in the description or whether the timekeeper was working while traveling. *Univ. of Kan.*, 2009 WL 3191707, at *5-*6. For example, an entry on 1/6/20 for 5.00 hours states "Travel to Kansas City for Rule 16 conference; plan and prepare for Rule 16 conference." (Doc. 60-4, at 13.) An entry on 1/7/20 for 14.00 hours states "Travel from Kansas City to Topeka for Rule 16 conference; continue planning and preparing for Rule 16 conference; attend and participate in Rule 16 conference; travel from Topeka." (Doc. 60-4, at 13.) These examples illustrate the difficulty with Plaintiffs' block billing practices, as they make it difficult to distinguish that time that is to be reduced as travel time. *Univ. of Kan.*, 2009 WL 3191707, at *5-*6.

### iii.  Secretarial/Clerical Work

Some of Plaintiffs' time was spent on secretarial or clerical tasks and should not be compensable. Purely clerical work such as filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage is not compensable time. *Univ. of Kan.*, 2009 WL 3191707, at *8. Similarly, ordering and paying for copies, communicating with court reporter, obtaining and preparing summonses, and communicating with process servers are purely clerical or secretarial

tasks that counsel may have performed but did not require legal skill; these should be deducted. *Bell*, 2010 WL 126189, at *5.

For example, an entry on 12/10/19 bills 0.20 hours for "Conference with E. Witt regarding travel arrangements for case management conference." (Doc. 60-4, at 12.) Part of an entry on 8/23/19 for 0.40 hours states "Review order granting motion for PHV admission; work with E. Witt to register for electronic service." (Doc. 60-4, at 12.) A paralegal entry on 8/2/19 for 2.50 hours states "Make revisions to AO 121; prepare initiating documents for filing; file new case with the Kansas District Court; download, save and email co-counsel, Sean Quinn, Court stamped documents." (Doc. 60-4, at 7.) An entry on 10/8/19 for 0.30 hours states "Print out copies for special process server, Tom Tippit and discuss service of process." (Doc. 60-4, at 7.) Further, an attorney entry on 11/7/19 for 0.50 hours states "Review and docket scheduling order deadlines," while a paralegal entry on 11/15/19 for 0.70 hours states "Docket and calendar dates and instructions associated with the Initial Order Regarding Planning and Scheduling." (Doc. 60-4, at 8.) A portion of an entry on 1/28/20 includes time for downloading, saving, and copying documents. (Doc. 60-4, at 9.) Entries on 7/29/20, 8/7/20 (twice), 8/10/20, 8/14/20, 8/25/20, and 9/11/20 bill for exchanging emails with a court reporter. (Doc. 60-4, at 19-21.) Various entries regarding preparation of and service of summonses and communications with court reporters, along with other secretarial and/or clerical work, should be disallowed by this Court.

### iv.  Other Excessive, Redundant, or Unnecessary Fees

Some of Plaintiffs' requested hours includes unwarranted duplication of work that should be excluded from the fee request. For example, Plaintiffs request fees for an attorney reviewing deposition transcripts when that same attorney actually attended the depositions. (Doc. 60-4, at 20:  compare entry related to depositions of Cuozzo and Behrens dated 8/6/20 (8.20 hours) with

entry dated 8/17/20 (4.20 hours); compare entry related to depositions of Annette Stahl and Charles Dultmeier dated 8/12/20 (9.40 hours) with entries dated 8/31/20 (1.30 and 1.50 hours); compare entry related to depositions of John Rollenhagen and Tim Rollenhagen dated 8/13/20 (8.1 hours) with entry dated 8/31/20 (1.8 hours); compare entry related to deposition of Matt McNicholas dated 8/18/20 (5.80 hours) with entry dated 9/2/20 (1.20 hours).) Additionally, some of Plaintiffs' billing records suggest duplication of services in regard to conferences, such as double billings for time spent by two or more attorneys conferencing on matters involved in the case. These fees should also be disallowed. *See Univ. of Kan.*, 2009 WL 3191707, at *9 ("Defendants should not be required to compensate plaintiffs more than once for time spent by multiple attorneys in the same meeting."). For example, this Court should compare entries on 8/4/20 by separate attorneys for telephone conferences to plan and prepare for discovery conference/hearing with the court. (Doc. 60-4, at 19.) Other unnecessary fees include time for reviewing entries of appearance. (Doc. 60-4, at 9, 12, 14, 15.)

### v. Reasonable Hourly Rate

This Court must also determine the reasonably hourly rates for the various attorneys and support staff involved in this case on behalf of Plaintiffs. Plaintiffs bear "'the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Dunn & Fenley, LLC v. Diederich*, No. 10-4038-KHV, 2012 WL 359753, at *6 (D. Kan. Feb. 2, 2012); *see also Univ. of Kan.*, 2009 WL 3191707, at *10 ("In examining the hourly rate, the court is to refer 'to the prevailing market rates in the relevant community.'"). This Court's first step in setting a rate of compensation is "to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Univ. of Kan.*, 2009 WL

3191707, at *10. When making this determination, if the Court does not have adequate evidence of prevailing market rates before it, the Court may, in its discretion, use other relevant factors to establish the rate, including its own knowledge. *Id.*

Here, the requested hourly rates for two of Plaintiffs' counsel—John D. LaDue and Sean J. Quinn—inappropriately reflect South Bend, Indiana, rates, as opposed to rates in the area where this Court sits. *See, e.g., Dunn & Fenley, LLC*, 2012 WL 359753, at *6 ("Defendant correctly points out that in setting the hourly rate, the Court should establish a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the Court sits at the time the court awards fees."). This Court should reduce the hourly rates for both John D. LaDue and Sean J. Quinn.

### vi.   Adjustment to Lodestar

This Court should also reduce the lodestar downward to take into account the limited success achieved by Plaintiffs. The acceptance of the offer of judgment here was a small fraction of the amount of damages claimed by Plaintiffs. Further, Plaintiffs did not receive the temporary or permanent injunctions they sought, nor did they receive an order requiring Defendants to produce, for impounding during the pendency of this action and for destruction thereafter, all house plans and elevations which infringe Plaintiffs' copyrights, including all photographs, blueprints, film negatives, magnetic tapes, digitally scanned and/or stored images, and all machines and devices by which such infringing copies may be reproduced, viewed or disseminated, which are in the possession of, or under the direct or indirect control of Defendants, as they also sought. (Doc. 24, at 16-17.) The amount they seek in attorneys' fees and costs dwarfs their actual recovery. This Court should reduce the lodestar downward in a similar degree. *See Dunn & Fenley, LLC*, 2012 WL 359753, at *7 (finding 80 percent reduction in

lodestar warranted where settlement of copyright case was a small fraction of the amount of damage claimed by Plaintiff); *Caputo*, 2004 WL 1503953, at *9, *11 (finding acceptance of $15,000 offer of judgment justified downward adjustment where plaintiff sought multi-million dollar damages); s*ee also Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 558-59 (7th Cir. 1999) (upholding reduction of modified lodestar by 50 percent where offer of judgment accepted was substantially less than the monetary and equitable relief requested).

## III.    Conclusion

This Court should deny Plaintiffs' Motion for Costs, Including Attorney Fees. Plaintiffs accepted an unambiguous, crystal clear offer of judgment to resolve any and all issues by and between the parties. All issues by and between the parties included costs and fees. Despite this acceptance, Plaintiffs seek to tack on additional costs and fees to their judgment, although they failed to comply with Local Rule 54.2, which should justify a denial outright. Even if this Court determines that Plaintiffs *may* be entitled to costs and fees, this Court still should exercise its discretion to not award costs and/or fees in this case. Alternatively, if this Court awards costs and/or fees, it should disallow many of Plaintiffs' requests.

Respectfully Submitted,

SHAFFER LOMBARDO SHURIN, PC

*/s/ Gregory P. Forney*
Richard F. Lombardo        KS#22326
Gregory P. Forney          KS#16329
Michael F. Barzee          KS#27217
2001 Wyandotte Street
Kansas City, Missouri 64108
816-931-0500
rlombardo@sls-law.com
gforney@sls-law.com
mbarzee@sls-law.com
ATTORNEYS FOR DEFENDANT
DULTMEIER HOMES CO.

*/s/ Bryan W. Smith*
Bryan W. Smith  KS#15473
SMITH LAW FIRM
5930 S.W. 29th Street, Suite 200
Topeka, Kansas 66614-2538
785-234-2453
bryan@bryansmithlaw.com
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2020, I electronically filed the foregoing with the Clerk of the Court via the CM/ECF system, which will send notice of electronic filing to the following counsel of record:

Steven H. Mustoe
EVANS & DIXON LLC
82 Corporate Woods
10851 Mastin Blvd., Suite 900
Overland Park, KS 66210
Telephone: (913) 440-0004
Facsimile: (913) 341-2293
smustoe@evans-dixon.com

John D. LaDue (PHV)
Sean J. Quinn (PHV)
SOUTHBANK LEGAL: LADUE | CURRAN | KUEHN
100 East Wayne Street, Suite 300
South Bend, Indiana 46601
Telephone: (574) 968-0760
Facsimile: (574) 968-0761
jladue@southbank.legal
squinn@southbank.legal
ATTORNEYS FOR PLAINTIFFS