IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

PLAN PROS, INC., et al.,

                Plaintiffs,

      Vs.                                 No.  19-4068-SAC-ADM

DULTMEIER HOMES CO., et al.,

                Defendants.


MEMORANDUM AND ORDER

Still pending in this case is the plaintiff Plan Pros, Inc.'s and Prime Designs, Inc.'s (jointly referenced as "Plan Pros'") motion for costs and attorneys' fees pursuant to 17 U.S.C. §§ 505 and 1203(b). ECF# 60. Both statutes provide that the court in its discretion may "award a reasonable attorney's fee to the prevailing party." Lingering questions over the plaintiffs' compliance with the consultation requirements in D. Kan. Rule 54.2 led this court to order more efforts to comply with the spirit and letter of this requirement. ECF# 65. After which, the parties reported wanting to discuss the possibility of mediation and then later pursued it. When their efforts failed to resolve the fee dispute, they asked the court to proceed with its ruling on the numerous issues and objections raised in their filings. ECF# 70. This order is that ruling.

In August of 2019, Plan Pros and Prime Designs, Inc. filed this suit against Dultmeier Homes Co. alleging copyright violations of their

elevation artwork, and architectural drawings. In January of 2020, the plaintiffs amended their complaint adding A Design Discovery Inc. as a defendant.  As part of their prayer for relief, Plan Pros asks in ¶ e for the "Plaintiffs' attorney fees" and in ¶ f for the "Plaintiffs' court costs, taxable costs, and the cost associated with the retention, preparation and testimony of expert witnesses." ECF# 24, p. 16.

Before discovery was completed, the final pretrial conference was held or any summary judgment motions were filed, the defendants Dultmeier Homes Co. and A Design Discovery Inc. (jointly referenced as "Dultmeier") jointly made an offer of judgment pursuant to Fed. R. Civ. P. Rule 68 on September 17, 2020, that stated in full, "COMES NOW all defendants and hereby jointly make an offer of judgment pursuant to Rule 68 as follows:  1.  Defendants jointly offer plaintiffs $75,000.00 to resolve any and all issues by and between the parties." ECF# 56. One week later, the plaintiffs filed their notice that said they "hereby accept the Joint Offer of Judgment served on" them pursuant to Rule 68. ECF# 57. The Clerk thereafter entered judgment "pursuant to Fed. R. Civ. P. 68 and based upon the defendants' Joint Offer of Judgment . . . and the plaintiffs' Acceptance of Offer" stating that "the plaintiffs, Plan Pros, Inc. and Prime Designs, Inc., shall recover from the defendants, Dultmeier Homes, Co. and A Design Discovery, Inc., the sum of $75,000.00." ECF# 58, p. 1. Plan Pros thereafter filed its motion for costs including attorney's fees. ECF# 60.

In their motion, Plan Pros argues Dultmeier's Rule 68 offer of judgment did not include costs and attorney's fees which now must be addressed by the court. Dultmeier counters that their unambiguous offer of judgment included costs and attorney's fees which means the court should deny the plaintiffs' efforts to tack on more to what already has been resolved. This dispute turns on interpreting the offer of judgment within Rule 68's operational framework.

Rule 68 is intended to promote settlements, but it "does so only in the very limited context of restricting a defending party's liability for litigation costs." *Felders v. Bairett*, 885 F.3d 646, 655 (10th Cir. 2018) (citations omitted). In pertinent part, Rule 68(a) provides: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, <u>with the costs then accrued</u>." (underlining added). Interpreting the phrase, "with the costs then accrued," the Supreme Court in *Marek v. Chesny*, 473 U.S. 1, 6, 10 (1985), held in relevant part, (1) that a defendant's Rule 68 offer may be a lump sum that does not "itemize the respective amounts being tendered for settlement of the underlying substantive claim and for costs;" and (2) that Rule 68 "costs" includes attorney's fees "where the underlying statute defines 'costs' to include attorney's fees." Both holdings apply here.

This case comes under the second holding in *Marek*. The plaintiffs bring their action in part under the Copyright Act which includes a

remedy provision at 17 U.S.C. § 505 that states, "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Thus, "absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorney's fees, we are satisfied such fees are to be included as costs for purposes of Rule 68." *Marek v. Chesny*, 473 U.S. at 8. Plan Pros may seek attorney fees as costs now unless Dultmeier's lump-sum Rule 68 offer also included costs/fees.

In deciding the lump-sum issue, the Supreme Court in *Marek* interpreted Rule 68 as follows:

> The critical feature of this portion of the Rule is that the offer be one that *allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued.* In other words, the drafters' concern was not so much with the particular components of offers, but with the *judgments* to be allowed against defendants. If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs; if the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion, see *Delta Air Lines, Inc. v. August, supra* 450 U.S., at 362, 365, 101 S.Ct., at 1153, 1156 (POWELL, J., concurring), it determines to be sufficient to cover the costs. In either case, however, the offer has *allowed* judgment to be entered against the defendant both for damages caused by the challenged conduct and for costs. Accordingly, it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowing for costs, or, for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment not include costs, a timely offer will be valid.
>
> This construction of the Rule best furthers the objective of the Rule, which is to encourage settlements. If defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers. As the Court of Appeals observed, "many a defendant would be

> unwilling to make a binding settlement offer on terms that left it
> exposed to liability for attorney's fees in whatever amount the court
> might fix on motion of the plaintiff." 720 F.2d, at 477.

*Marek v. Chesny*, 473 U.S. at 6–7 (italics in original). Central to the Court's

interpretation of Rule 68 was that the offer must allow judgment to be

entered both for damages and for costs. If the offer "recites" the inclusion of

costs or "specifies an amount for costs," then the judgment will include costs

upon the plaintiff's acceptance of the offer. 473 U.S. at 6. On the other

hand, if the offer fails to "state that costs are included" or to specify "an

amount for costs," then the court must enforce Rule 68 and "include in its

judgment an additional amount" for costs in its discretion. *Id.* The Supreme

Court's interpretation plainly emphasizes the importance of the Rule 68 offer

using clear terms in addressing the matter of costs. This interpretation must

influence the court in construing Dultmeier's offer of judgment.

Dultmeier argues its Rule 68 offer unambiguously included costs

and fees, because it was a lump sum offer on the specified terms of

"$75,000.00 to resolve any and all issues by and between the parties."

ECF## 56 and 61, p.3. Using the Court's interpretation of Rule 68 in *Marek*

as the operating framework, the court finds the issue is whether Dultmeier's

offer of judgment "recites" the inclusion of costs, as the offer certainly does

not specify an amount for costs. Neither the parties nor the court has found

any controlling Tenth Circuit precedent directly applicable in deciding

whether Dultmeier's offer, as so worded, necessarily recites the inclusion of

costs and fees. Looking at the parties' cited research and conducting its own, the court believes the line of precedent most consistent with *Marek* leads to the result that Dultmeier's offer of judgment fails to recite the inclusion of costs and fees.

There is a line of circuit authority holding that when statutory attorney fees are awardable as costs then a Rule 68 offer must explicitly reference costs or specify an amount for costs in order for the offer to be construed as unambiguously including attorney fees. *Sanchez v. Prudential Pizza, Inc.*, 709 F.3d 689, 692-94 (7th Cir. 2013) (Title VII case with the offer making no explicit reference to costs and fees); *Lima v. Newark Police Dept.*, 658 F.3d 324, 330-331 (3rd Cir. 2011) (civil rights case with the offer making no explicit reference to costs and fees); *Bosley v. Mineral County Com'n*, 650 F.3d 408, 412-14 (4th Cir. 2011) (civil rights case with the offer making no explicit reference to costs and fees).

In *Sanchez,* the offer allowed judgment "in the amount of $30,000 including all of Plaintiff's claims for relief." 709 F.3d at 691. The court held that the burden of any silence or ambiguity about attorney fees falls on the offering defendant:

> Because Rule 68 puts plaintiffs at their peril whether or not they accept the offer, *the defendant must make clear whether the offer is inclusive of fees when the underlying statute provides fees for the prevailing party*. As with costs, the plaintiff should not be left in the position of guessing what a court will later hold the offer means.

709 F.3d at 692 (quoting *Webb v. James,* 147 F.3d 617, 623 (7th Cir.

1998)). The *Sanchez* court distinguished its earlier decision in *Norby v.*

*Anchor Hocking Packaging Co.*, 199 F.3d 390 (7th Cir. 1999), which had held

that no magic words were required for the offer of judgment, by noting:

> The *Nordby* defendant's offer specifically mentioned costs and specified
> that the counts subject to the offer were contained in Nordby's
> amended complaint. Although no "magic words" are required, *id*. at
> 393, Prudential Pizza's offer fails in both of these regards. Either
> failure alone is sufficient to render the offer ambiguous. If Prudential
> Pizza intended its offer to include attorney fees, its chosen language
> was insufficient.

709 F.3d at 693. The *Sanchez* court also noted the ambiguity created by the

offer referring to "claims" when the amended complaint laid out attorney

fees as part of the "demands" for relief. *Id*. The court concluded with this

keen observation:

> In the absence of the judicial gloss holding that an offer that is
> ambiguous as to costs and attorney fees will be held against the
> defendant, an ambiguous offer puts the plaintiff in a very difficult
> situation and would allow the offering defendant to exploit the
> ambiguity in a way that has the flavor of "heads I win, tails you lose."
> If the plaintiff accepts the ambiguous offer, the defendant can argue
> that costs and fees *were* included. If the plaintiff rejects the offer and
> later wins a modest judgment, the defendant can then argue that
> costs and fees were *not* included, so that the rejected offer was more
> favorable than the ultimate judgment and that the plaintiff's recovery
> of costs and fees should be limited accordingly. Whether the ambiguity
> is accidental or strategic, Rule 68 must be interpreted to prevent such
> strategic use of ambiguity by construing an ambiguous offer against
> the offering defendant's interests, whether the question arises from
> the offer's acceptance or rejection.

709 F.3d at 693–94. The *Sanchez* court then followed *Marek by* finding the

offer "silent as to costs and fees" after resolving "the ambiguity against the

offeror" and holding that the plaintiff could pursue attorney fees under the accepted offer of judgment. *Id*. at 694.

In *Lima*, the offer allowed judgment "in the amount of $55,000.00, including all of Plaintiff's claims for relief against all defendants." 658 F.3d at 324. Citing precedent from the Sixth, Seventh, Ninth and Eleventh Circuits, the Third Circuit summarized:  "Our sister courts of appeals have read *Marek* to require that a Rule 68 offer of judgment must explicitly state that costs are included; otherwise those costs must be determined by the court." 658 F.3d at 330 (citations omitted). The court distilled the operative principles to these:

> In sum, a valid Rule 68 offer of judgment necessarily includes costs and attorney's fees either explicitly or implicitly. When the costs are stated explicitly in the offer of judgment, the offeror is not subject to any additional liability. When, however, the offer of judgment is silent as to fees and costs, they must be fixed by the court after the offer of judgment is accepted. Extrinsic evidence of the parties' subjective intent is not admissible to determine whether a Rule 68 offer of judgment includes costs.

658 F.3d at 331. The court found that the offer "did not explicitly include attorney's fees or costs." *Id.* "As a matter of law, it cannot be said that the ambiguous, catchall phrase, 'all of Plaintiff's claims for relief' *explicitly* covers attorney's fees and costs." 658 F.3d at 332.

In *Bosley*, the offer allowed judgment in the amount of 30,000.00 "as full and complete satisfaction of [Bosley's] claim against . . . Defendants." 650 F.3d at 410 (italics omitted). The Fourth Circuit emphasized *Marek's* importance in interpreting offers of judgment:

> If a defendant intends to make a lump sum Rule 68 offer inclusive of awardable costs, *Marek* makes abundantly clear the means by which to do so: precise drafting of the offer to recite that costs are included in the total sum offered. *Id*. at 6, 105 S.Ct. 3012 ("If an offer recites that costs are included or specifies an amount for costs, and the plaintiff accepts the offer, the judgment will necessarily include costs."); *see also Laskowski v. Buhay*, 192 F.R.D. 480, 482 (M.D.Pa.2000) ( "If there is any occasion in civil litigation [that] calls for caution and care by counsel, it is the drafting of a Rule 68 offer." (internal quotation marks and alteration omitted)).
>
> Appellants could have easily drafted a Rule 68 offer either reciting that recoverable costs were included in the sum or specifying an amount for such costs. But they failed to do so, and it is this drafting failure that requires the result the district court reached here. When a Rule 68 offer of judgment is silent as to costs, a court faced with such an offer that has been timely accepted is obliged by the terms of the rule to include in its judgment an amount above the sum stated in the offer to cover the offeree's costs. *Marek*, 473 U.S. at 6, 105 S.Ct. 3012. Attorney's fees under 42 U.S.C. § 1988 qualify as Rule 68 costs because the statute defines those fees as costs. *Id*. at 9, 105 S.Ct. 3012. Thus, because the offer in this case did not indicate that recoverable costs were included, the district court was required by Rule 68 to include an additional amount in its judgment for such costs.

650 F.3d at 413. The court did not look to the parties' negotiations in interpreting the offer finding that extrinsic evidence is not to be considered and that ambiguities are resolved against the offeror:

> By choosing to couch their settlement offer in terms of a Rule 68(a) offer of judgment, Appellants availed themselves of the tactical advantages not available to the offeror of an ordinary settlement offer—namely, the ability to eliminate liability for any post-offer attorney's fees and costs in the event of a less favorable judgment after trial. *See Said v. Va. Commonwealth Univ./Medical Coll. of Va.*, 130 F.R.D. 60, 63 (E.D.Va.1990). A Rule 68(a) offeree is in a difficult position because the rule has a "binding effect when refused as well as when accepted." *Webb v. James*, 147 F.3d 617, 621 (7th Cir.1998). Unlike the offeree of an ordinary settlement offer—who may accept such offer on its terms or, without binding herself to the terms of the offer, reject it or make a counteroffer—a Rule 68(a) offeree is faced with the following choice: either accept the offer on its terms or proceed to trial and run the risk not only of obtaining a judgment less

9

than the offer but also paying the defending party's post-offer costs. *Said*, 130 F.R.D. at 63.

650 F.3d at 414.

The court has reviewed the defendant's cited case law and finds *Sanchez's* holding most applicable here and controlling over *Nordby* and *Pelkowski v. Highland Managed Care Group, Inc.*, 44 Fed Appx. 1, 2002 WL 1836509 (7th Cir. 2002). The court appreciates the similarity of terms found in Dultmeier's offer and the unpublished decision of *Pelkowski.* The court finds more compelling the Sixth Circuit's unpublished decision in *McGraw-Hill Global Education, LLC. v. Jones*, 714 Fed. Appx. 500, 502 (6th Cir. Oct. 26, 2017), in which the offer was to resolve "all issues between the" parties and was still found ambiguous on whether it included attorney fees under 17 U.S.C. § 505. The court relied on *Marek* in holding:

> In the context of Rule 68 offers and attorneys' fees, our precedent holds that an offer that fails to incorporate attorneys' fees into the stipulated compensation (here, the $359,254.00) will be read as allowing for payment of costs and, where a statute prescribes, attorneys' fees. *Fulps v. City of Springfield*, 715 F.2d 1088, 1092 (6th Cir. 1983). If the offer is silent or ambiguous on the matter, the plaintiff may petition the district court for an appropriate award of costs, including attorneys' fees. *See Marek*, 473 U.S. at 6, 105 S.Ct. 3012 ("[I]f the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of [Rule 68] to include in its judgment an additional amount which ... it determines to be sufficient to cover the costs.").

714 Fed. Appx. at 504. Finally, the defendants' citation of *Steiner v. Lewmar, Inc.*, 816 F.3d 26, 35 (2nd Cir. 2016), does not support their position but rather follows the explicit reference approach taken in *Sanchez*

10

and *Lima*: "Indeed, courts have held that statutory attorneys' fees claims are not unambiguously encompassed in a Rule 68 offer when the offer refers to substantive claims but does not explicitly refer to attorneys' fees." 816 F.3d at 35 (citations omitted).

Based on *Marek* and the persuasive line of Circuit precedent discussed above, the court finds that Dultmeier's offer of judgment fails to state clearly or explicitly mention that attorney fees are included in its offer. The court certainly agrees that, "[i]f a defendant intends to make a lump sum Rule 68 offer inclusive of awardable costs, *Marek* makes abundantly clear the means by which to do so: precise drafting of the offer to recite that costs are included in the total sum offered." *Bosley*, 650 F.3d at 413. Reciting that costs are included or specifying that costs in a certain amount are included are the practices outlined in *Marek* and recommended by all courts and leading treatises. *See, e.g.* 12 Fed. Prac. & Proc. Civ. § 3005.1 (3d ed. 2021). Instead, for whatever reason, Dultmeier chose not to mention costs or fees by name or specify an amount for them in its offer. Due to their silence, ambiguity results which is resolved against them as the offerors. Because the offer does not unambiguously include costs and fees, Plan Pros is not precluded from seeking attorney's fees under § 505.

Dultmeier next contends that the court should exercise its discretion under § 505 and not award any costs or fees after making a particularized assessment of the case. The Court "may ... award a

reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. In copyright cases, courts are to award attorney fees only in their discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). Rather than setting a "precise rule or formula" for when fees should be awarded, the Supreme Court "established several principles and criteria to guide" this decision. *Kirtsaeng v. John Wiley & Sons, Inc.*, ––– U.S. ––––, 136 S.Ct. 1979, 1985 (2016). The principles include that fees are not awarded "as a matter of course" but only after a "particularized, case-by-case assessment" and that plaintiffs and defendants are to be treated the same with each respectively encouraged to litigate defenses and claims. *Id*. The four, non-exhaustive factors to consider: "frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. In *Kirtsaeng*, the court recognized that the objective reasonableness of the losing side's position is entitled to significant or substantial, but not controlling, weight in accounting for all relevant factors. *Id*. at 1988-89. The Court explained:

> As we recognized in *Fogerty*, § 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions. *See supra*, at 1985. That means in any given case a court may award fees even though the losing party offered reasonable arguments (or, conversely, deny fees even though the losing party made unreasonable ones). For example, a court may order fee-shifting because of a party's litigation misconduct, whatever the reasonableness of his claims or defenses. *See, e.g., Viva Video, Inc. v. Cabrera*, 9 Fed.Appx. 77, 80 (C.A.2 2001). Or a court may do so to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing

position was reasonable in a particular case. *See, e.g., Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–595 (C.A.6 2008) (awarding fees against a copyright holder who filed hundreds of suits on an overbroad legal theory, including in a subset of cases in which it was objectively reasonable). Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.

*Kirtsaeng,* 136 S. Ct. at 1988–89.

On the factor of motivation, Dultmeier argues the motives of Plan Pros do not align with a fee award that promotes the purpose of copyright protection. Relying on the Seventh Circuit's comments in *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017), *rehearing and rehearing en banc denied*, (7th Cir. Jul. 10, 2017), a case involving plaintiffs who are affiliated with Plan Pros, Dultmeier says it has "paid the proverbial troll under the bridge" by allowing Plan Pros to take judgment instead of continuing expensive litigation. ECF# 61, p. 8. In Dultmeier's judgment, a fee award now would only perpetuate the questionable practice of Plan Pros in bringing dubious suits for prompt settlements from defendants who do not want the burden of expensive litigation.

A close reading of the Seventh Circuit's 2017 opinion in *Design Basics, LLC,* 858 F.3d at 1096, which labels what Plan Pros and its affiliates are doing as "the Art of the Intellectual Property Shakedown," raises justifiable concerns here. The same law firm which represents Plan Pros in this suit appealed a summary judgment order against a Plan Pros' affiliate

13

asking the Seventh Circuit to overrule its 2017 decision. *Design Basics, LLC v. Signature Construction, Inc.*, 994 F.3d 879 (7th Cir. 2021). Not only did the Circuit decline to overrule its precedent, but the Chief Judge writing for the panel clarified the elements for a prima facie case of infringement in cases like this where the "copyright protection is thin":

> For this category of claims, only extremely close copying is actionable as unlawful infringement. Put more precisely, this type of claim may move forward only if the plaintiff's copyright design and the allegedly infringing design are virtually identical. That standard is not satisfied here, so we affirm.

*Id*. at 882-83. This Circuit panel also repeated and reinforced its 2017 description of Design Basics and its business strategy:

> Copyright law strikes a practical balance between the intellectual-property rights of authors and the public interest in preserving the free flow of ideas and information and encouraging creative expression, all in furtherance of the constitutional purpose to "promote the Progress of Science and useful Arts." U.S. CONST. art. 1, § 8, cl. 8; *see generally Google LLC v. Oracle Am., Inc.*, ––– U.S. –––– , 141 S. Ct. 1183, 1195, ––– L.Ed.2d –––– (2021). Copyright trolls— opportunistic holders of registered copyrights whose business models center on litigation rather than creative expression—disrupt this balance by inhibiting future creativity with negligible societal benefit. "Like the proverbial troll under the bridge, these firms try to extract rents from market participants who must choose between the cost of settlement and the costs and risks of litigation." *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1097 (7th Cir. 2017).
>
> Plaintiff Design Basics, LLC, is a copyright troll. *Id*. at 1096–97. The firm holds registered copyrights in thousands of floor plans for suburban, single-family tract homes, and its employees trawl the Internet in search of targets for strategic infringement suits of questionable merit. The goal is to secure "prompt settlements with defendants who would prefer to pay modest or nuisance settlements rather than be tied up in expensive litigation." *Id.* at 1097. As we explained in *Lexington Homes*, "[t]his business strategy is far removed from the goals of the Constitution's intellectual property clause." *Id.*

Instead, it amounts to an "intellectual property shakedown." *Id.* at 1096.

. . . .

. . . Design Basics holds registered copyrights in thousands of floor plans for suburban, single-family homes. *Lexington Homes*, 858 F.3d at 1096. The plans are not technical construction drawings. Rather, they are basic schematic designs, largely conceptual in nature, and depict layouts for one- and two-story single-family homes that include the typical rooms:  a kitchen, a dining area, a great room, a few bedrooms, bathrooms, a laundry area, a garage, stairs, assorted closets, etc.

More than a decade ago, Patrick Carmichael and Myles Sherman bought Design Basics "as an investment opportunity." *Id*. at 1096. Since then, litigation proceeds have become "a principal revenue stream" for the firm. *Id*. at 1097. Indeed, Design Basics incentivizes its employees to search the Internet for litigation targets by paying a finder's fee—a percentage of net recovery—if they locate a prospective infringement defendant. This is the core of the firm's business model. *Id.*

The firm maintains an easily accessible website displaying 2,847 floor plans. It also regularly sends mass mailings of its designs to members of the National Association of Home Builders. Over the years the firm has sent millions of publications containing its floor plans to home builders. When it initiates litigation, it hopes—indeed, expects—to find these designs in the defendant's files.

994 F.3d at 882-83. In discussing the claims of Design Basics, the Circuit panel noted the plaintiffs' expert architect, Matthew McNicholas, had "served as an outside expert for Design Basics in at least 13 lawsuits," and then concluded that his report "purports to separately analyze the distinguishing features of each of the copyrighted plans at issue here, but the descriptions are so ordinary and interchangeable as to be virtually meaningless." *Id.* at 884-85. Mr. McNicholas is also Plan Pros' expert witness in this lawsuit. ECF# 60-7.

Plan Pros does not address in its reply brief either this factor or the Seventh Circuit's 2017 decision. But in its initial memorandum, Plan Pros argues that the defendants illegally copied the plaintiffs' copyrighted architectural works, technical drawings, and presentation artwork and that the defendants' agents even admitted to copying the plaintiffs' artwork to advertise the defendants' home designs on their website. Plan Pros explains their suit was filed upon learning the defendants had directly copied their presentation artwork from the internet and had used it to advertise their home designs. Plan Pros also asserts that discovery showed the defendants' home designs were copies of their copyrighted architectural works with a few minor changes.

The court has reviewed the parties' attached exhibits, including the report of the plaintiffs' expert witness, Mr. McNicholas. The court has weighed the parties' different arguments on the merits of the claims and defenses. On its face, the similarities between the plaintiffs' presentation or elevation artwork and that artwork found on the defendants' website appears to provide reasonable grounds for Plan Pros to have filed this lawsuit. On the other hand, the differences between the plaintiffs' architectural drawings and the defendants' drawings when judged under the rulings of these recent leading Seventh Circuit decisions do put into question the viability of the plaintiffs' architectural drawing claims and their motives for expanding this litigation beyond the presentation or elevation artwork.

16

Based on what this court must describe as a very limited preview of the parties' respective positions in the litigation, it finds this factor weighs slightly in favor of a fee award but only after an adjustment to the fee award is made to account for what appear to be weak claims based on the architectural drawings.

The court reaches the same conclusion when considering the objective reasonableness of Dultmeier's defenses. The Supreme Court in *Kirtsaeng* explained this factor:

> When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (i.e., unreasonable) party gives him an incentive to litigate the case all the way to the end. The holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small; and likewise, a person defending against a patently meritless copyright claim has every incentive to keep fighting, no matter that attorney's fees in a protracted suit might be as or more costly than a settlement. Conversely, when a person (again, whether plaintiff or defendant) has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action. The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment); and the infringer with no reasonable defense has every reason to give in quickly, before each side's litigation costs mount. All of those results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (i.e., potential plaintiffs and defendants) will enjoy the substantive rights the statute provides.

*Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. at 1986–87. Dultmeier presents good reasons in the fee memorandum for defending against the claims based on the architectural drawings. Their memorandum, however, does not offer equally good reasons for defending their copying of PlanPros'

presentation or elevation artwork. Thus, the court finds this factor favors a fee award to a limited degree.

A fee award may "deter repeated instances of copyright infringement or overaggressive assertions of copyright claims, again even if the losing position was reasonable in a particular case." *Kirtsaeng*, 136 S. Ct. at 1989. And even if damages are small, the fee award incentivizes copyright holders "to litigate the case all the way to the end." *Id.* at 1986. Dultmeier argues the factor of deterrence is not present here, because PlanPros asserts no continuing infringement to deter. Concerning the presentation artwork, Dultmeier says the copied images served only a placeholder function and eventually were replaced with photographs of the homes they built. The plaintiffs did not reply to these arguments. Nonetheless, the court cannot ignore the importance of deterring the defendants from copying more presentation and elevation artwork. Accordingly, the court concludes the factors support a limited award of fees.

Amount of Costs

Dultmeier disputes numerous items as non-taxable. Costs recoverable under the Copyright Act are limited to "the six categories specified in the general costs statute, codified at §§ 1821 and 1920." *Rimini St., Inc. v. Oracle USA, Inc.*, ---U.S.---, 139 S.Ct. 873, 876 (2019). "[T]he burden is on the party seeking costs, . . . to establish the amount of compensable costs and expenses to which it is entitled and assumes the risk

of failing to meet that burden. *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248–49 (10th Cir. 2002)(citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1208 (10th Cir. 1986). PlanPros filed a reply, but it does not address any of Dultmeier's objections to these costs and did not reserve any opportunity to carry their burden in proving the same.

The court sustains Dultmeier's objection to the $320.00 for PlanPros' preparation of overlay graphics apparently used in the expert witness report. PlanPros has not shown the necessity of this expense. The plaintiffs' expert witness report fails to employ the "virtually identical" standard adopted by the Seventh Circuit. In affirming the summary judgment order against Design Basics, the Seventh Circuit observed that the district court rejected the color-filling graphic overlays used by the expert witness, the same expert witness appearing here, because the technique was seen "as an attempt 'to manipulate and enhance the appearance of similarity.'" 994 F.3d at 885. The district court judge "extracted the line drawings from the plans without the color-filling enhancements and confined his analysis accordingly." *Id.* Thus, the court finds an award for these costs here unjustified by necessity and unsupported by the Seventh Circuit's analysis on its evidentiary value and necessity.

The plaintiffs bill $3,375 and $431.25 as their portion of the mediation fees. Dultmeier objects citing the holdings in *Bell v. Turner Recreation Commn.*, No. 09-2097-JWL, 2010 WL 126189, at *9 (D. Kan.

Jan. 8, 2010)("To be sure, mediation fees are not covered by section 1920 and costs associated with a mediation are not recoverable under that statute. *See Brisco–Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002)."), and *Cohen-Esrey Real Estate Services, Inc. v. Twin City Fire Ins. Co.*, No. 08-2527-KHV, 2011 WL 3608671, at *5 (D. Kan. Aug. 12, 2011) ("Plaintiff correctly objects that mediation fees are not taxable under 28 U.S.C. § 1920." (citations omitted). The plaintiffs did not respond to this objection with the proof necessary to find this to be a taxable cost. The court, therefore, declines to tax the plaintiffs' portion of the mediation fees.

The plaintiffs bill deposition transcript expenses of $2,188.90 and $526.30. Dultmeier objects that PlanPros has not itemized these costs so that the court can determine whether they were necessary to the counsel's performance in handling the case up to the Rule 68 offer. The defendants cite *Burton v. R.J. Reynolds Tobacco Co.*, 395 F.Supp.2d 1065, 1079-81 (D. Kan. 2005), as requiring that the transcripts serve a purpose beyond convenience and ease for counsel and that "depositions taken merely for discovery are not taxable as costs." The Tenth Circuit has held that the costs of transcribing depositions are generally awardable to the prevailing party if "a deposition is not obtained unnecessarily even if not strictly essential to the court's resolution of the cost where the deposition is offered into evidence, is not frivolous, and is within the bounds of vigorous advocacy." *Callicrate v. Farmland Industries, Inc.*, 139 F.3d 1336, 1340

(10th Cir. 1998). Reasonable necessity looks at what the parties knew when the expenses were incurred while understanding that "caution and proper advocacy may make it incumbent on counsel to prepare for all contingencies which may arise during the course of litigation which include the possibility of trial." *Id*. The court does not believe it equitable to penalize the plaintiffs for incurring costs that seemed necessary in being ready to defend against a summary judgment motion. The objection is denied.

PlanPros seeks the pro hac vice fees for its two out-of-state counsel. The defendants object that the fees for the lead counsel, John LaDue, should be denied, as this case did not proceed to trial. "Pro hac vice fees are recoverable in the District of Kansas." *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, 237 F.R.D. 659, 663 (D. Kan. 2005) (citations omitted). As the plaintiffs were competently represented both by local counsel and by one out-of-district counsel, the court will sustain the objection to the second pro hac vice fee at the time in question. If the case had been closer in time to a possible trial, the second fee $50 would have been a recoverable cost.

The plaintiffs ask for services fees of $335, and Dultmeier objects that the fees are not itemized and have not been shown to be recoverable up to the amount that would have been assessed if the U.S. Marshal's office had served the summons. The general rule is that "service fees to private process servers are generally taxable up to the amount that

would have been incurred if the U.S. Marshal's office had effected service."
*Cohen-Esrey Real Estate*, 2011 WL 3608671, at *1 (citing *Burton*, 395
F.Supp.2d at 1078. The plaintiffs' counsels' billing looks to be for private
service done by Pro Legal Services with a date of October 14, 2019. The
court's docket sheet shows the summons issued for Dultmeier Homes was
issued to an attorney for service on September 11, 2019, and the summons
was returned as served on October 9, 2019, upon the treasurer of Dultmeier
Homes, at his residence presumably in Topeka, Kansas. The proof of service
shows no fees for travel or services, and the process server discloses only a
box address for himself in Shawnee Mission, Kansas. The lack of detail would
be grounds for denying this cost, but the court will allow $65 which is the
cost of service for U.S. Marshal plus a mileage fee of $20, as it appears
service required more than one trip here. Instead of $335, the court will
allow $85.

The defendants next object to $1.80 for PACER Docket Report
Fees arguing that the itemization fails to show these expenses were
necessarily incurred and authorized by statute apart from simple overhead.
Because PlanPros did not respond to the defendants' objection showing that
these costs are typically billed to clients in this area, the court will deny this
cost. *Christos v. Halker Consulting,* LLC, 2019 WL 3778278, at *9 (D. Colo.
Aug. 12, 2019).

Dultmeier disputes the plaintiffs' recovery of travel expenses. The travel expenses of $81.75 for the plaintiffs' counsel in Overland Park, Kansas to attend the January 7th scheduling conference in Topeka are part of the bill of costs. The defendants likewise challenge the recovery under attorney fees for PlanPros' Indiana counsel's travel expenses on January 7th of $315.88 for air travel and $158.81 for hotel and for the plaintiffs' Indiana counsel's travel expenses of $724.36 for the Rule 16 conference on February 24. Dultmeier relies on case law disallowing counsel's travels as stated in *Burton*, 395 F.Supp.2d at 1087, which relied upon *Augustine v. United States*, 810 F.2d 991, 996 (10th Cir.1987) (finding no abuse of discretion in refusing to tax counsel's travel expenses), and *Centennial Management Services, Inc. v. Axa Re Vie*, 196 F.R.D. 603, 607 (D.Kan. 2000) (denying counsel's travel expenses). In the civil rights context, the Tenth Circuit has held:

> Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount. However, because there is no need to employ counsel from outside the area in most cases, we do not think travel expenses for such counsel between their offices and the city in which the litigation is conducted should be reimbursed. Departure from this rule should be made in unusual cases only. Thus, the district court properly disallowed travel costs to and from Denver for counsel based in Washington, D.C. The district court properly allowed reimbursement for the expense of travel between Denver and the Canon City prison, given its finding that such costs would normally be billed to a private client.

*Ramos v. Lamm*, 713 F.2d 549, 559 (10th Cir. 1983), *overruled on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S.

23

711, 717 n. 4 (1987). Thus, absent a showing that local counsel could not have reasonably handled this litigation, travel expenses from their out-of-district counsels' offices to the litigation are denied, except for "the travel costs associated with" local counsel's commute "between Kansas City and Topeka is warranted as costs that would normally be billed to the client if local counsel only had been used." *University of Kansas v. Sinks*, No. 06-2341-JAR, 2009 WL 3191707, at *15 (D. Kan. Sep. 29, 2009), *appeal dismissed*, No. 10-3007 (10th Cir. Apr. 15, 2010). The plaintiffs have not shown this is an unusual case that their local counsel who also concentrates his practice in intellectual property and commercial litigation in Kansas City lacked the reasonable skill or expertise to handle on his own. There is nothing on the face of this court record to suggest otherwise. Thus, the court will deny the out-of-state counsels' travel expenses included as fees, but it will grant as part of the recoverable attorney fees those travel expenses billed by local counsel from Kansas City. *See Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990); *Animal Leg. Def. Fund v. Kelly*, No. 18-2657-KHV, 2020 WL 4000905, at *6 (D. Kan. July 15, 2020), *appeal pending*, No. 20-3082 (10th Cir. May 1, 2020).

Amount of Fees:  Computation of Lodestar

Arriving at an award of reasonable attorneys' fees begins with determining the lodestar figure by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Zinna v. Congrove*, 680

F.3d 1236, 1242 (10th Cir. 2012). A court may increase or decrease the

lodestar "to account for the particularities of the suit and its outcome." *Id*.

"The party requesting attorney fees bears the burden of proving the amount

of hours spent on the case and the appropriate hourly rates." *United*

*Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233 (10th Cir.

2000) (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th

Cir. 1998)). The Tenth Circuit has said this burden entails:

> In order to prove the number of hours reasonably spent on the
> litigation, the party must submit "meticulous, contemporaneous time
> records that reveal, for each lawyer for whom fees are sought, all
> hours for which compensation is requested and how those hours were
> allotted to specific tasks." *Id*. at 1250. The district court can reduce
> the number of hours when the time records provided to the court are
> inadequate. *Id*. Finally, the district court must reduce the actual
> number of hours expended to a reasonable number to ensure services
> an attorney would not properly bill to his or her client are not billed to
> the adverse party. *Id*.
>
> When determining the appropriate rate to apply to the
> reasonable hours, "the district court should base its hourly rate award
> on what the evidence shows the market commands for ... analogous
> litigation." *Id*. at 1255. The party requesting the fees bears "the
> burden of showing that the requested rates are in line with those
> prevailing in the community for similar services by lawyers of
> reasonably comparable skill, experience, and reputation." *Ellis v.
> University of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir.1998)
> (quotation marks and citation omitted). The focus must be on the
> "prevailing market rate in the relevant community." *See id*. (quotation
> marks and citation omitted). "[A] district court abuses its discretion
> when it ignores the parties' market evidence and sets an attorney's
> hourly rate using the rates it consistently grant[s]." *Case*, 157 F.3d at
> 1255 (quotation marks and citation omitted). The court may not use
> its own knowledge to establish the appropriate rate unless the
> evidence of prevailing market rates before the court is inadequate. *Id*.
> at 1257; *see Lucero v. City of Trinidad*, 815 F.2d 1384, 1385 (10th
> Cir.1987).

*United Phosphorus, Ltd.,* 205 F.3d at 1233–34.

25

"The lodestar looks to 'the prevailing market rates in the relevant community.'" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (quoting *Blum v.* Stenson, 465 U.S. 886, 895 (1984)). The first step is "to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case*, 157 F.3d at 1256 (internal quotation marks and citation omitted). As movants, the plaintiffs must provide adequate evidence from which the court can make this determination. *Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006). The court looks to the relevant community's prevailing market rate and may not substitute "its own knowledge for the evidence presented on the prevailing market rates." *United Phosphorus, Ltd*., 205 F.3d at 1234.

PlanPros' counsel, Sean Quinn and John LaDue, are attorneys practicing in South Bend, Indiana. Mr. Quinn declares that he has been practicing for over 10 years and has concentrated his practice in intellectual property handling over 100 infringement cases. His current hourly rate at his Indiana firm is $350 per hour. Mr. LaDue declares that he has been practicing for over 29 years and has concentrated his practice in intellectual property and commercial litigation handling over 100 trademark or copyright infringement cases. His current hourly rate at his Indiana firm is $500 per hour. The plaintiffs' counsel, Steven Mustoe, is a partner in a law firm located in Overland Park, Kansas. He declares that he has been practicing

26

for over 25 years and has concentrated his practice in intellectual property and commercial litigation handling over 100 infringement claims in his career. His current hourly rate at his firm is $295 per hour. He exercised billing judgment in this case and charged a revised rate of $267.54.

PlanPros has not presented evidence showing the higher rates charged by Mr. Quinn and Mr. LaDue to be reasonable for the community relevant here. They cite the Oregon hourly rates quoted in *Dunn & Fenley, LLC v. Diederich*, No. 10-4038-KHV, 2012 WL 359753 (D. Kan. Feb. 2, 2012). The plaintiffs, however, overlook that the court in *Diederich* reduced the quoted hourly rates for Oregon as higher than Kansas City rates. The cited decision does not specify the applicable Kansas City rates used in calculating the lodestar. More importantly here, the district court in *Diederich* reduced the lodestar fee amount by 80% to account for the limited success reflected in the amount of the settlement, the unnecessary involvement of Oregon counsel, and the "substantial over-lawyering and litigation tactics" being "not commensurate with the economic realities of the parties or the issues at stake in the lawsuit." *Id.* at *7 n. 5.

PlanPros also encourages the court to consider the American Intellectual Property Law Association's 2015 Economic Survey Report for the average legal fees incurred through discovery on copyright infringement litigation with one and ten million dollars at risk. ECF# 60-10. The plaintiffs highlight that the median or midpoint for total costs and fees was $250,000

27

for the location designated as "other central United States locations." ECF#
60-10. They argue their requested fees are in line with this survey, but
without further explanation, this survey is too general and geographically
broad to be helpful here. The survey numbers cited by PlanPros are higher
than for Chicago and are only eclipsed by the "other West." *Id.* Other than
the value of the litigation at risk, the plaintiffs fail to show how this case
matches up with the typical copyright infringement litigation. From what the
Seventh Circuit has said about these suits and the litigation mill run by the
plaintiffs, looking at this general survey evidence raises more questions
about the differences than answers from the limited similarities. The court
did observe that the first quartile of respondents reported that total costs for
cases resolved by mediation was $43,000.00. *Id.* Such a number seems
more in keeping with the kind of litigation involved here.

   Dultmeier objects that the hourly rates for Mr. Quinn and Mr.
LaDue do not reflect those charged within the relevant community of this
court. The defendants ask the court to reduce the Indiana counsels' rates,
but they provide no evidence of comparable rates in the Topeka/Kansas City
area. The plaintiffs again did not reply to the defendants' objection. The
court agrees with Dultmeier's objection. From the record in this case, the
court finds the rates charged by Mr. Mustoe to be the only evidence of
prevailing market rates charged by intellectual property attorneys with
comparable experience. Thus, the court shall reduce the hourly rates

charged by Mr. Quinn to $295.00 and by Mr. Ladue to $400.00 after accounting for the additional considerations of his reputation and unique experience in this field of practice.

Moving next to the reasonable number of hours billed, PlanPros' memorandum purports to seek for Sean Quinn (283.7 hours x $330-350 = $99,774.05), for John Ladue (12.2 hours x $500 = $6,100.00), for Steven Mustoe (37.3 hours x $267.54 = 9,979.10), for an associate (.9 hours x $186.33 = $167.70) and for a paralegal (5.6 hours x $81.51 = $456.45). ECF# 60-1, p. 16. The totals here match those in the plaintiffs' memorandum, but the court used the revised hours and rates for Mustoe, associate and paralegal found in the plaintiffs' bill of costs, ECF# 60-4, p. 6, as those revised hours and rates produce the totals used both in the PlanPros' memorandum and bill of costs.

Dultmeier lodges several objections to the plaintiffs' counsels' time records based on block billing, allowability, necessity, duplication, and reasonableness. The defendants also argue these objections justify a lodestar reduction as does the plaintiffs' limited success and the nature of this litigation.

*Block billing*. The defendants cite the general rule in this district for discounting hours when the billing records do not allow a determination of reasonableness on the number of hours spent for certain work. They cite one example in which a single entry of 3.9 hours is described as emails

exchanged with mediator, legal research, conference with expert witness, and emails exchanged with expert witness. ECF# 60-4, p. 18. The entry lumps together various activities and does not further break down the work by time as was done on the same page just seven lines later. The defendants point out another example of block billing under their travel time objection. The plaintiffs submit a single entry of 14 hours without any break down for the described activities of multiple travels along with planning, preparation, and participation in a Rule 16 conference. ECF# 60-4, p. 13. The court will account for these block billing problems in the lodestar reduction.

Travel Time. Dultmeier relies on *Fox v. Pittsburg State University*, 258 F.Supp.3d 1243 (D. Kan. 2017), *appeal dismissed,* No. 17-3159 (10th Cir. Mar. 19, 2018),  arguing that PlanPros' counsel should be able to recover only 50 percent of their hourly rates for travel time. "Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the most reasonable approach is to allow counsel to recover 50 percent of travel time." *Fox*, 258 F.Supp.3d at 1259 (citing *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311, 2015 WL 4920292, at *9 (D. Kan. Aug. 18, 2015) (citing *Aquilino v. Univ. of Kan.*, 109 F.Supp.2d 1319, 1326 (D. Kan. 2000)); *see Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1106 (10th Cir. 2010) (The "court has discretion to apply a reduced hourly rated if the time is otherwise

unproductive." (footnote omitted)). The plaintiffs' counsels' billing records fail to evidence the productive nature of those travel time hours. As Dulmeier points out, the plaintiffs simply lumped their travel time with other preparation work. For example, five hours are billed for "[t]ravel to Kansas City for Rule 16 conference; plan and prepare for Rule 16 conference." ECF# 60-4, p. 13. The next day, the same counsel bills 14 hours for "Travel from Kansas City to Topeka for Rule 16 conference; continue planning and preparing for Rule 16 conference; attend and participate in Rule 16 conference; travel from Topeka." *Id*. Lumping travel time with other activities prevents this court from calculating a precise reduction, but the court will consider this circumstance in calculating the appropriate lodestar reduction.

>           *Secretarial/Clerical Work*. The defendants object to clerical work billed by the paralegal and counsel. In *Fox*, the court outlined these general rules:

> "Purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."50 Thus, "purely clerical or secretarial tasks" should also not be billed at an attorney rate either.51 The court must deduct "[t]asks that amount to filing, organizing files, making copies, printing, ordering file folders, organizing boxes, updating files with correspondence and pleadings, and preparing files for storage."52 Rather, "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence" are properly paralegal work that may be performed under attorney supervision.53

50 *Univ. of Kan. v. Sinks*, No. 06-2341, 2009 WL 3191707, at *8 (D. Kan. Sept. 28, 2009) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)).
51 *Hayes v. I.C. Sys., Inc.*, No. 14-2513-JTM, 2015 WL 506192, at *4 (D. Kan. Feb. 6, 2015).
52 *Sinks*, 2009 WL 3191707, at *8.
53 *Jenkins*, 491 U.S. at 288 n.10, 109 S.Ct. 2463.

258 F.Supp.3d at 1256. Dultmeier objects to counsel billing for a conference on travel arrangements, for work on registering for electronic service, for exchanging emails with a court reporter, and for preparing summons. The defendants object to the paralegal billing for making revisions, for filing the new case, for downloading, saving and emailing filings to counsel, and for printing out copies for special process server. The court has reviewed the entries in dispute without the benefit of any reply from PlanPros explaining or justifying those disputed billings. The court reduces the hours billed by Mr. Quinn by 1.4 and the paralegal's hours by 1.3.

*Excessive, Redundant or Unnecessary Fees.* The defendants dispute the time billed by Mr. Quinn to review transcripts of depositions he attended. The defendants object to multiple attorneys billing for conferencing on matters involved in the case. The defendants also make the blanket objection to unnecessary fees for "entries of appearances." Again, PlanPros has not replied to these objections.

The court's review includes evaluating the hours billed for a task and determining if they are reasonable. *Case*, 157 F.3d at 1250. Part of this review are considerations like the complexity of the case, the reasonable

strategies pursued, the other side's maneuvering, and potentially duplicative services. *Id*. The plaintiffs have not shown the necessity and reasonableness of the deposing counsel also billing for reviewing the deposition transcripts when he did. PlanPros' counsels' billing records mostly fail to disclose any purpose or justification for reviewing the deposition transcripts at that time. The court sustains the defendants' objection and deducts 9.8 hours billed by Mr. Quinn.

Dultmeier objects to billing for duplicated services because multiple plaintiffs' counsels billed for telephone conferences to plan and prepare for a discovery conference with the court. The general rule is that courts may reduce "hours for duplicated conferences and inter-office and intra-office meetings" when the time billed is excessive. *Animal Leg. Def. Fund v. Kelly*, 2020 WL 4000905, at *6.  (D. Kan. July 15, 2020); *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 616 F.3d 1098, 1105 (10th Cir. 2010). Because the plaintiffs' billing records lack detail, the court cannot say that those in dispute show excessive time being billed. While the court will overrule the specific objections, the court's general impression of the plaintiffs' counsels' overbilling for services will be a factor considered in the general lodestar reduction. Dultmeier also objects to other unnecessary billings as involving the repeated review of entries of appearances and notices of deposition. The court sustains those objections and deducts one hour.

Based on its review of PlanPros' documentation as adjusted to reflect the above rulings, the court calculates the following lodestar. For the plaintiffs' Kansas law firm, Evans & Dixon L.L.C., the court calculates fees consistent with the plaintiffs' exhibit three, ECF# 60-4, pp. 4 and 6 after making any adjustments consistent with the above rulings:

| | | | | | |
|---|---|---|---|---|---|
| Steven Mustoe | 37.3 hrs | x | $267.54 | = | $9,979.10 |
| Associate | .9 hrs | x | $186.30 | = | $167.70 |
| Paralegal | 4.3 hrs | x | $81.51 | = | $350.45 |
| Plus Travel Expenses from Kansas City | | | | | $81.75 |
| **Total** | | | | | $10,579.00 |

For the plaintiffs' Indiana law firm of SouthBank Legal, the court calculates the fees consistent with their submitted billing records after making any adjustments consistent with the above rulings:

| | | | | | |
|---|---|---|---|---|---|
| John LaDue | 12.2 hrs | x | $400.00 | = | $4,880.00 |
| Sean Quinn | 271.5 hrs | x | $295.00 | = | $80,092.50 |
| Less Travel Expenses from Indiana | | | | | ($1,201.05) |
| **Total** | | | | | $83,771.45 |

This results in a lodestar of $94,350.45.

Dultmeier asks the court to reduce the loadstar to account for the PlanPros' limited success in recovering a small fraction of the claimed damages and in not obtaining injunctive relief or the impounding and destruction of any architectural drawings or elevation drawings allegedly

34

infringing their copyrights. The defendants point to Judge Vratil's decision in *Diederich* which reduced the lodestar by 80% noting that the plaintiff sought damages of $862,285. but settled for $50,000, attorney's fees, and the defendant changing his infringing power point slides. 2012 WL 359753, at *7.

PlanPros offers no direct reply to this argument. They do suggest that a fee award of approximately 1.5 times the offer of judgment is "proportional to the offer, the procedural status of the case, and the amount of fees and expenses incurred to date." ECF# 62, p. 6. The plaintiffs concede their valuation of this case was much higher than the defendants' offer of judgment.

The court admits its exercise of discretion here is shaped by the Seventh Circuit's recent decisions that negatively discussed the plaintiffs' business and litigation practices and that heightened the plaintiffs' burdens in bringing viable infringement claims in this kind of litigation. The court reiterates that the Seventh Circuit has held that "in this particular architectural genre in which copyright protection is thin, proving unlawful appropriation takes more than a substantial similarity between the plaintiff's work and the defendant's work. Instead, only a virtually identical plan infringes the plaintiff's copyrighted plan." 994 F.3d at 890. The Seventh Circuit said that differences in "room dimensions, ceiling heights and styles, and exterior dimensions" were enough material differences "as a matter of

law to preclude an inference of actual copying." *Id*. From its review of the PlanPros' expert report here, in many instances, such material differences can be found putting into question the legal and factual merit of what could be called a substantial portion of this litigation.

While the latest Seventh Circuit opinion came down after the offer of judgment here, the plaintiffs should have seen the writing on the wall from the earlier Seventh Circuit decision. It is not surprising then they accepted an offer here that was less than 5% of their actual damages and statutory damages claimed as the low end of their alleged damages when they mediated in July 2020. PlanPros certainly had limited success particularly considering that they settled without insisting on further injunctive relief to protect their copyrighted work. Indeed, as it has played out, this litigation leaves the impression that it has been less about promoting the Constitution's intellectual property clause and more in keeping with the Seventh Circuit's description of Design Basics' business strategy of filing these lawsuits with the appearance of expensive litigation ahead to induce early settlements. Based on how the legal and factual issues in this kind of litigation have been framed by the Seventh Circuit, this copyright case could have been handled competently by local counsel alone. The plaintiffs have not shown that anything about this case was so complex and sophisticated as to justify the total hours billed by the plaintiffs' Indiana counsel. Not only because of the limited success attained here but because

36

of the large number of hours billed by a law firm which regularly represents the plaintiffs in such litigation, consistently uses the same witnesses, and regularly employs the same expert witness, the court is compelled to reduce the lodestar calculation by fifty percent. This reduction also takes into the account the court's ruling on the billing objections discussed above.

In conclusion, the court finds that the plaintiffs are entitled to $47,175.23 in attorneys' fees and to $3,250.10 in costs as adjusted by the above rulings.

IT IS THEREFORE ORDERED that the plaintiffs' motion for costs, including attorney fees (ECF# 60) is granted in part, and that in the exercise of its discretion, the court awards costs and attorney fees in the amount of $50,425.33.

IT IS FURTHER ORDERED that the clerk of the court shall amend the judgment to reflect the entry of these costs and fees.

Dated this   26th   day of May, 2021, Topeka, Kansas.


  /s Sam A. Crow
Sam A. Crow, U.S. District Senior Judge